UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RAYMOND P. TEAGUE, <br><br> Plaintiff, <br><br> v. <br><br> OFFICER J. WOZNIAK #209, Police Officer, SGT. HUNTER #177, Sergeant, PETER SORMAZ, Chief of Police, JOHN DOE, Police Officer, and JOHN DOE, Deputy Chief of Police and/or Commander, <br><br> Defendants. | CAUSE NO.: 2:25-CV-160-TLS |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss [ECF No. 21] filed by the Defendants on July 9, 2025. The Plaintiff filed responses [ECF Nos. 24, 27, 49], on July 23, 2025, August 6, 2025, and February 2, 2026. The Defendants filed a reply [ECF No. 26] on July 30, 2025. For the reasons set forth below, the Court grants the motion.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, the Court must accept all the factual allegations as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Erickson v.*

*Pardus*, 551 U.S. 89, 93–94 (2007); *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016).

"Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (citation omitted). A plaintiff must "adequately connect specific defendants to illegal acts." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). A document filed pro se is to be liberally construed, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (cleaned up).

"In considering a motion to dismiss under Rule 12(b)(6), district courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim. The freedom includes exhibits attached to the complaint or documents referenced in the pleading if they are central to the claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (cleaned up). And "[w]hen an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Id.* (citation omitted).

In this case, the Plaintiff incorporated Defendants Wozniak and Hunter's dashboard camera video footage of the Plaintiff's traffic stop in the Complaint both by reference and by filing the video footage with the Complaint as Exhibit 1. *See* ECF Nos. 3, 48. The Plaintiff also incorporated the letter from Defendant Sormaz and the report by Defendant Wozniak by

reference in the Complaint and by attaching both to the Complaint as Exhibit 2 (Defendant Sormaz's letter) and Exhibit 3 (Defendant Wozniak's report). *See* Exs. 2, 3, ECF No. 1-1. Thus, the dashboard camera video footage, Defendant Sormaz's letter, and Defendant Wozniak's report may be considered by the Court.

## BACKGROUND

On April 7, 2025, the Plaintiff filed a pro se Complaint alleging that on June 3, 2024, at about 3:33 p.m. to 4:00 p.m., he observed from his car as he was driving Defendant Officer Wozniak conducting another traffic stop on the side of the road. Compl., ¶ 1, ECF No. 1. Defendant Wozniak's report indicates that the incident involving the Plaintiff occurred beginning at 3:33 p.m. near Lincoln Ridge Funeral Home (7607 W. Lincoln Hwy) in Schererville, Indiana. Ex. 3, ECF No. 1-1.

The Plaintiff alleges that he is very aware of the rules of the road. Compl., ¶ 1. But, according to the Plaintiff, he could not get into another lane as he passed Defendant Wozniak without causing an accident, which he alleges Exhibit 1 will show, so he reduced his speed to 25–30 miles per hour on a 50 miles per hour road. *Id*. (citing Ex.1(b), ECF No. 48).[1] The Plaintiff alleges that he saw Defendant Wozniak look directly at him and his car as Defendant Wozniak was walking back to his patrol car after handing the other driver something. *Id*., ¶ 2. The Plaintiff describes his car as "somewhat flashy," and says that he is a "young Black male" who was stereotyped immediately by Defendant Wozniak. *Id*. The Plaintiff purports that, at the

---

[1] On April 7, 2025, the Plaintiff manually filed Complaint Exhibit 1 on a flash drive containing a file with the dashboard camera footage of the incident at issue from Defendant Sargeant Hunter labeled VIDEO_TS.IFO, which is viewable, and another file with the title wozniak.xspf, which is not viewable. *See* ECF No. 3. Because the Complaint refers to the dashboard camera footage of Defendant Wozniak and the Defendants' Motion to Dismiss also refers to that footage, on January 21, 2026, the Court ordered the Defendants to file with the Clerk of Court—and provide the Plaintiff with a copy—the dashboard camera footage of Officer Wozniak in a video format, *see* ECF No. 46, which they filed on January 30, 2026, *see* ECF No. 48. Although the Plaintiff refers to both dashboard camera footages as Exhibit 1, for clarity, the Court refers to Defendant Hunter's footage as Exhibit 1(a) and Defendant Wozniak's footage as Exhibit 1(b).

3

time he passed Defendant Wozniak, traffic was moderate and there was no reason for Defendant Wozniak to pull the Plaintiff over seconds after leaving the other car's window. *Id*. Thus, the Plaintiff alleges that Defendant Wozniak's pulling him over was discriminatory and racially motivated.

According to the Plaintiff, Exhibit 1 will also show there was no way for Defendant Wozniak to gauge the Plaintiff's speed correctly, and it will show that the car in the other lane in front of the Plaintiff was traveling faster than the Plaintiff. *Id*., ¶ 3 (citing Ex. 1(b), ECF No. 48). Further, the Plaintiff alleges that Defendant Wozniak was in his patrol vehicle before the Plaintiff passed him, which Exhibit 1 will show. *Id*. (citing Ex. 1(b), ECF No. 48). The Plaintiff says he mentioned this due to the fact that Defendant Wozniak's report severely erodes his credibility and shows his motives. *Id*.; Ex. 3, ECF No. 1-1, pp. 2–3 of 5. Specifically, the Plaintiff states that, in the report, Defendant Wozniak's exact words include, "I observed this Black Chrysler pass by my fully marked patrol vehicle, leaving very little room for me to open door/walk. The Chrysler continued its speed as it passed, I could feel the wind from the Chrysler shake the patrol car." Compl. ¶ 3; (quoting Ex. 3, ECF No. 1-1, p. 2 of 5).

The Plaintiff alleges that, instead, Exhibit 1 will show Defendant Wozniak in the patrol car sometime before the Plaintiff passed, and the only time the car moved was when Defendant Wozniak sat down in the patrol car. Compl. ¶ 3 (citing Ex. 1(b), ECF No. 48). The Plaintiff also alleges that the statement in Defendant Wozniak's report was false. *Id*., ¶ 4. According to the Plaintiff, Exhibit 1 will show that once Defendant Wozniak made it to the Plaintiff's window, the Plaintiff was cooperative, and all the Plaintiff wanted was to understand why Defendant Wozniak was violating his rights and was requesting the Plaintiff's identification when he did not commit a crime or break any traffic law that would have given probable cause to pull him over. *Id*. (citing Ex. 1(b), ECF No. 48).

The Plaintiff additionally alleges that during the pull over he requested a sergeant. *Id*., ¶ 5. As a result, Defendant Sergeant Hunter arrived, at which point the Plaintiff alleges that

Defendant Wozniak made a false statement to Defendant Hunter, which Exhibit 1 will also show. *Id*. (citing Ex. 1(a), ECF No. 3). According to the Plaintiff, Defendant Hunter was there to lock up the Plaintiff if he did not comply with Defendant Wozniak violating his rights. *Id*. The Plaintiff alleges that he explained the situation to Defendant Hunter to no avail. *Id*., ¶ 6. The story Defendant Wozniak told Defendant Hunter was all Defendant Hunter needed. *Id*. The Plaintiff alleges that, once he realized this and was told to step out of the car, he complied. *Id*. But the Plaintiff alleges that before he could even get out of the car, Defendant Hunter drew his weapon on him for no reason. *Id*. The Plaintiff honestly thought he was "gonna die." *Id*. The Plaintiff alleges that all he could do was throw his hands up and hope he would make it out alive. *Id*.

The Plaintiff alleges that, because this was an illegal stop, once the Plaintiff was out of the car, he informed Defendants Wozniak and Hunter that he did not consent to any search of his property or person, but he was searched anyway. *Id*., ¶ 7. The Plaintiff alleges that he was searched by Defendants Wozniak and Hunter, and a John Doe Officer searched the hood of his car, which violated his Fourth Amendment rights. *Id*. The Plaintiff alleges that all three officers had no probable cause and he was illegally searched, seized (property and person), and thrown into jail. *Id*. He also alleges that his car was illegally impounded/seized. *Id*., ¶ 8.

Defendant Wozniak's version of the encounter differs. According to his report, which the Plaintiff attached to his Complaint, he observed a black Chrysler traveling eastbound leaving very little room for him to open his door/walk as he was walking back to his fully marked patrol car. Ex. 3, ECF No. 1-1, p. 2 of 5. The Chrysler continued its speed as it passed, Defendant Wozniak could feel the wind from the Chrysler shake his vehicle, and the vehicle failed to switch lanes or slow down while passing as is required. *Id*.

Defendant Wozniak's dashboard camera video footage depicts the black Chrysler passing Defendant Wozniak's patrol vehicle at the speed of traffic without brake lights on. Ex. 1(b), 4:08–11, ECF No. 48. Defendant Wozniak then pulled over the black Chrysler for what turned

5

out to be an approximately thirty-minute traffic stop culminating in arresting the Plaintiff and taking him to jail. *Id.*, 4:58–41:09.

As Defendant Wozniak approached the Crysler, he said to the Plaintiff, "What's up man. How you doing today?" *Id.*, 5:19–21. He also said, "When there is a traffic stop, or a tow truck, or an ambulance on the right side of the road, and you can make it to the left lane, you gotta make it to the left lane and/or slow down." *Id.*, 5:26–34. The Plaintiff responded, "I hit the brakes . . . and there was another car over there . . . ." *Id.*, 5:34–39. And Defendant Wozniak said, "From my view, it looked like you coulda made it over. But I ain't gonna argue man. . . . If you can, slow down and make an effort to go to the left lane, okay." *Id.*, 5:39–49. He also said, "Just your license and I'll get you on outta here." *Id.*, 5:49–52.

The Plaintiff said, "I don't believe that I broke any law. So can I get a supervisor out here?" *Id.*, 6:02–06. And Defendant Wozniak radioed in for a supervisor. *Id.*, 6:06–26. Then he said to the Plaintiff, "Just your license, and I'll get you on outta here, okay." *Id.* 6:26–28. And the Plaintiff said, "I'll speak to the supervisor first." *Id.*, 6:28–31.

Then the Plaintiff called someone on his cell phone to meet him, to which Defendant Wozniak said, "I'm not having no one come to a traffic stop. So tell them to park down the block . . . ." *Id.*, 6:36–41. To the person he was talking to on the cell phone, the Plaintiff said, "He says I'm being pulled over cuz he was on the shoulder, and I should've stopped in my lane or something." *Id.*, 6:42–47. Defendant Wozniak said, "You should've slowed down or made an effort to get in the left lane. Neither of which you did." *Id.*, 6:48–59. To which the Plaintiff interrupted, "I slowed down." *Id.*, 6:53–59. Moments later, the Plaintiff said again, "I know for sure that I slowed down. I didn't break any law." *Id.*, 7:27–31. Defendant Wozniak said, "Not from my view man . . . ." *Id.*, 7:32–33.

Defendant Wozniak again asked for the Plaintiff's license, and the Plaintiff again said that he was going to wait for the supervisor. *Id.*, 7:33–55. Defendant Wozniak said, "You're failing to give me an id?" *Id.*, 7:55–57. And the Plaintiff said, "I'm not failing to do anything. I

6

would like to know for a valid reason of why I was pulled over." *Id*., 7:58–8:02. He also said, "I was not speeding. I slowed down. I didn't do anything wrong. So shouldn't have got pulled over." *Id*., 8:03–11. And then he said, "You see me driving. There is no way for you to tell my speed as I am driving passed and you're walkin' away." *Id*., 8:34–43.

      Defendant Wozniak replied, "You could've made an effort . . . [to get over to the left lane]." *Id*. 8:54–9:57. The Plaintiff said, "I know you pulled me over for no reason. . . . No reason whatsoever. I was not speeding. I did not break any laws." *Id*., 9:03–11. Then Defendant Wozniak offered to print a copy of the law, and he brought the printout to the Plaintiff. *Id*., 9:15–11:50.

      About ten minutes later, Defendant Hunter arrived on the scene. *Id*., 19:47. Defendant Wozniak told Defendant Hunter about stopping the Plaintiff, "I was like hey man. Um. I'm not sure if you know this, a lot of people don't. There's a move over law. I was like you didn't even attempt to slow down, man. And instantly, he was super combative, super argumentative." *Id*., 19:50–20:01. He added, "I'm like listen bro. I'll explain it to you. You either got to make an effort to move over to the left lane or you need to slow down." *Id*., 20:01–06. Defendant Wozniak also explained, "And then he wants to argue, well how do you know I didn't slow down. Well because you almost took me and my door off. So I printed off the IC code for him and now he feels like it doesn't apply to him." *Id*., 21:06–16. Defendant Wozniak also said, "He's not giving me his license." *Id*., 20:23–52. Defendant Hunter responded, "Well then he can go to jail for a failure to identify." Ex. 1(a), 1:49–1:51, ECF No. 3. Defendant Wozniak replied, "If he gives you his license straight off the bat, . . . I'm okay okay with [just] citin' him." *Id*., 1:51–59.

      Then Defendant Hunter approached the Plaintiff's vehicle, "Sergeant Hunter, what can I do for you?" 2:07–10. The Plaintiff said, "As you can see, I was just pulled over for exactly the same thing that every single car on this road is doing as they were passing. I was going less than the speed limit." *Id*., 2:10–22. Defendant Hunter said, "Okay. So first off, can I see your driver's

7

license, please?" *Id*., 2:27–30. To which the Plaintiff said, "I'm tryin' to see what crime did I commit." *Id*., 2:30–34. Defendant Hunter said, "He's explained that to you right there." *Id*., 2:34–35.

Defendant Hunter asked the Plaintiff multiple times, "What is your name, sir." *Id*., 2:36–41. After further discussion, Defendant Hunter also said, "If you refuse to identify yourself, you could be arrested for refusal to identify, okay." *Id*., 3:17–21. After giving the Plaintiff more explanation, he commanded, "You are going to step out of your vehicle . . . ." *Id*., 4:09–10. At which point, the Plaintiff put his hands up in the air while still in the vehicle. Ex. 1(b), 22:52–53, ECF No. 48. And Defendant Hunter, who was at the passenger window, began pointing his yellow taser at the Plaintiff through the car, while Defendant Wozniak stood at the driver's side door. *Id*., 22:48–53. The Plaintiff exited his vehicle with his hands in the air, and Defendant Wozniak did a pat down of the Plaintiff, stating "nothing on you, right, checking for weapons." 22:53–23:04. Then Defendant Wozniak restrained the Plaintiff with handcuffs, at which point Defendant Hunter put his taser away. *Id*., 23:04–24. Defendant Wozniak asked the Plaintiff, "Where's your license at?" *Id*., 23:25–26. And the Plaintiff replied, "I don't agree to any search." *Id*., 23:26–27. Defendant Wozniak finished patting down the Plaintiff. 23:27–49. Then he put the Plaintiff in his patrol car and, about ten minutes later, drove him to the jail. *Id*. 23:49–41:09.

Defendant Wozniak's report provides, "During the transport, the [Plaintiff's] Illinois identification card was located in his right pants pocked and he was identified as RAYMOND PATRICK TEAGUE. Teague's driving status was ran and he returned revoked out of Illinois." Ex. 3, ECF No. 1-1, p. 3 of 5.

In the Complaint, the Plaintiff alleges that he filed a complaint with the Internal Affairs Division of the Schererville Police Department about this incident. Compl. ¶ 8. Internal Affairs responded to his complaint in the form of a letter from Defendant Peter Sormaz, Schererville Police Chief, telling him that Defendants Wozniak and Hunter were exonerated, which the Plaintiff contends violates his right to Due Process. *Id*.; Ex. 2, ECF No. 1-1. The Plaintiff asserts

that all the evidence could not have been reviewed before the decision was made given the fact that once the prosecutor looked at the dashboard camera video footage and that his case related to the traffic stop was immediately dismissed with prejudice. Compl. ¶ 8 (citing Ex. 1, ECF Nos. 3, 48; Ex. 4, ECF No. 1-1).

As a result of this incident, the Plaintiff alleges that he was put in a very bad place financially. *Id*., ¶ 9. He also lost his job, separated from his wife, and lost time with his child. *Id*. He additionally suffers from anxiety, depression, and PTSD from thinking he was "gonna die." *Id*.

## ANALYSIS

The Plaintiff's Complaint alleges claims, which invoke the Fourth Amendment to the United States Constitution, as well as a Due Process claim. 42 U.S.C. § 1983 "provides a remedy for violations of federal rights committed by persons acting under color of state law." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). To state a claim under § 1983, a plaintiff must allege that the defendant caused the deprivation of a federal constitutional right and that the defendant acted under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

Specifically, in this case, the Defendants request that the Court dismiss the Plaintiff's claims for violation of the Fourth Amendment based on an unreasonable seizure, excessive force, a false arrest, false imprisonment, and unreasonable searches of his person and property. They also request that the Court dismiss the Plaintiff's claim for a violation of his federal constitutional right to Due Process. The Court addresses each claim in turn.

**A.    Fourth Amendment Claims**

*1.    Unreasonable Seizure*

First, the Plaintiff alleges that Defendant Wozniak's traffic stop was an unreasonable

seizure under the Fourth Amendment because there was no reason for pulling him over when he drove passed Defendant Wozniak as the Plaintiff reduced his speed to 25–30 mph on a 50-mph road, and the Plaintiff could not get into another lane as he passed Defendant Wozniak without causing an accident, which Exhibit 1 will show.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. "Generally, the decision to stop a car is reasonable, and comports with the Fourth Amendment, 'where the police have probable cause to believe that a traffic violation has occurred.'" *United States v. Simon*, 937 F.3d 820, 828 (7th Cir. 2019) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). Such "[p]robable cause exists when 'the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense.'" *Id.* at 828–29 (quoting *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000)). This "is an objective standard, based on the totality of the circumstances." *Id.* (citation omitted). To establish a reasonable belief, "[t]he officer must be able to identify some particularized and objective basis for thinking that the person to be stopped is or may be about to engage in unlawful activity," such as a factual basis for thinking that the person to be stopped has violated a traffic law. *United States v. Miranda-Sotolongo*, 827 F.3d 663, 666 (7th Cir. 2016) (cleaned up).

As noted by the Plaintiff, the charges against him were dismissed with prejudice, but "[w]hether the driver actually committed a traffic infraction is irrelevant for Fourth Amendment purposes so long as there was an objective basis for a reasonable belief he did." *United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019) (citation omitted); *see United States v. Yang*, 39 F.4th 893, 899–900 (7th Cir. 2022) ("[T]he question is whether the officer reasonably believed that he saw a traffic violation, not whether the [plaintiff] actually violated the law." (cleaned up)). This

10

means that "[i]f an officer reasonably thinks he sees a driver commit a traffic infraction, that is a sufficient basis to pull him over without violating the Constitution." *Simon*, 937 F.3d at 829 (citing *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005)).

Here, as highlighted by the Defendants, the video contained in Exhibit 1(b) from Defendant Wozniak's dashboard camera as well as Defendant Wozniak's report show that, from Defendant Wozniak's perspective, he would have reasonably observed the Plaintiff continue to drive with the speed of traffic without braking as he passed Defendant Wozniak's patrol vehicle parked on the side of the road. Therefore, it was reasonable for Defendant Wozniak to believe that the Plaintiff did not slow to at least ten miles per hour below the posted speed limit, violating the Indiana statute that requires at least such when approaching stationary emergency vehicles. *See* Ind. Code § 9-21-8-35(b).[2] More specifically, the dashboard camera video footage incontrovertibly contradicts the Plaintiff's allegation that he reduced his speed to 25–30 miles per hour because, in fact, from Defendant Wozniak's point of view from the patrol car, the Plaintiff appears not to have reduced his speed at all as he drove past Defendant Wozniak. *See Brooks-Albrechtsen v. Mitchell*, 681 F. App'x 521, 523 (7th Cir. 2017) ("The video from Brooks-Albrechtsen's dashboard camera proves that he did, in fact, continue traveling at a high rate of speed" such that "there was nothing unreasonable about Mitchell's intuition that a vehicle

---

[2] Indiana Code § 9-21-8-35(b) provides, in relevant part:
> (b) Upon approaching a stationary authorized emergency vehicle, when the authorized emergency vehicle is giving a signal by displaying alternately flashing red, red and white, or red and blue lights, a person who drives an approaching vehicle shall:
> (1) proceeding with due caution, yield the right-of-way by making a lane change into a lane not adjacent to that of the authorized emergency vehicle, if possible with due regard to safety and traffic conditions, if on a highway having at least four (4) lanes with not less than two (2) lanes proceeding in the same direction as the approaching vehicle; or
> (2) proceeding with due caution, reduce the speed of the vehicle to a speed at least ten (10) miles per hour less than the posted speed limit, maintaining a safe speed for road conditions, if changing lanes would be impossible or unsafe.

Ind. Code § 9-21-8-35(b)(1)–(2).

11

that sounded as if it was traveling faster than the speed limit might be doing so." (citing *Tapley v. Chambers*, 840 F.3d 370, 377 (7th Cir. 2016); *United States v. Peters*, 743 F.3d 1113, 1117 (7th Cir. 2014))). The dashboard camera video footage incontrovertibly establishes that Defendant Wozniak's traffic stop of the Plaintiff was supported by probable cause as a matter of law and, thus, complied with the Fourth Amendment. *See Miranda-Sotolongo*, 827 F.3d at 666; *Jones by Jones v. Webb*, 45 F.3d 178, 182 (7th Cir. 1995) ("Probable cause can be found as a matter of law, however, only when the facts permit but one conclusion . . . ." (citation omitted)).

The Plaintiff also alleges that Defendant Wozniak did not have probable cause to pull the Plaintiff over because the only reason for the stop was that the Plaintiff is a young Black male. However, "[t]he Fourth Amendment permits pretextual traffic stops as long as they are based on an observed violation of a traffic law." *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014) (citation omitted); *see United States v. Murray*, 89 F.3d 459, 461 (7th Cir. 1996) ("Ulterior motives do not invalidate a police stop for a traffic violation, no matter how minor, if a motor vehicle law infraction is detected."). Here, because the dashboard camera video footage incontrovertibly establishes that Defendant Wozniak reasonably observed the Plaintiff fail to slow his speed when passing in violation of Indiana Code § 9-21-8-35(b), any alleged pretext for the stop based on a racial motive is irrelevant under the Fourth Amendment.

2.   *Excessive Force*

Next, the Plaintiff alleges that during Defendant Wozniak's traffic stop, the Plaintiff fully complied, and after Defendant Hunter arrived on scene, Defendant Hunter drew his weapon on the Plaintiff for no reason. The Fourth Amendment prohibits the use of excessive force during an arrest. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989); U.S. Const. Amend. IV. An excessive force claim, such as this, that occurs during the course of an arrest or apprehension of a suspect

12

"[is] governed by the Fourth Amendment's 'reasonableness' standard, which turns on the totality of the circumstances confronting [the officers] viewed from the perspective 'of a reasonable officer on the scene.'" *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018) (quoting *Graham*, 490 U.S. at 396–97). "Whether a particular use of force was objectively reasonable 'is a legal determination rather than a pure question of fact for the jury to decide.'" *Id*. (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012)). In analyzing an excessive force claim, the court must "consider the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight." *Bayon v. Berkebile*, 29 F.4th 850, 854 (7th Cir. 2022) (cleaned up).

In *Baird v. Renbarger*, the court explained that the Seventh Circuit Court of Appeals has "held that gun pointing when an individual presents no danger is unreasonable and violates the Fourth Amendment." 576 F.3d 340, 345 (7th Cir. 2009) (citing *Jacobs v. City of Chicago*, 215 F.3d 758, 773–74 (7th Cir. 2000); *McDonald v. Haskins*, 966 F.2d 292, 294–95 (7th Cir. 1992)). In *Baird*, the court held that the Fourth Amendment provides protection against an officer "point[ing] a submachine gun at various people when there was no suggestion of danger, either from the alleged crime that was being investigated or the people he was targeting." *Id*. at 346 (citing *Jacobs*, 215 F.3d at 773–74; *McDonald*, 966 F.2d at 294–95).

Nevertheless, the *Baird* court also explained that "the critical point" is that "while police are not entitled to point their guns at citizens when there is no hint of danger, they are allowed to do so when there *is* reason to fear danger." *Id*. This requires "delv[ing] further into the facts to determine the context in which the gun pointing occurs." *Id*. In illustration of this point, in *Baird*, the Seventh Circuit Court of Appeals gave *Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989),

13

as an example of when a "court[] d[id] not find [a] constitutional violation[] for gun pointing when there [was] a reasonable threat of danger or violence to police." *Id*. In *Collins*, an individual approached the scene where officers were dealing with two suspects who were resisting arrest. 892 F.2d at 496–97. One of the officers pointed his gun at the approaching individual and asked him to leave. *Id.* at 497. The court held the allegations insufficient for a Fourth Amendment violation based on excessive force "given the uncertainty of [the individual's] intentions and the escalation of activity involving the arrest." *Id.*

Here, contrary to the Plaintiff's allegations, the dashboard camera video footage shows that the Plaintiff refused to identify himself to Defendants Wozniak and Hunter and repeatedly argued that he did not violate the Indiana move over law, Defendant Hunter instructed the Plaintiff to exit the vehicle, the Plaintiff put his hands in the air, Defendant Hunter pointed a yellow taser at the Plaintiff (but he did not deploy or threaten to deploy the taser), the Plaintiff exited the vehicle with his hands up in the air, Defendant Wozniak patted down the Plaintiff, Defendant Wozniak then placed handcuffs on the Plaintiff, and, then as soon as the Plaintiff was restrained, Defendant Hunter put away the taser.

Thus, the dashboard camera video footage incontrovertibly establishes that Defendant Hunter's conduct of pointing a taser at the Plaintiff but not deploying the taser was reasonable under the circumstances. He had a legitimate interest in protecting himself, Defendant Wozniak, and the general public within the vicinity of the traffic stop from the possibility of the Plaintiff reaching for a weapon to harm Defendant Hunter, Defendant Wozniak, or the general public after the Plaintiff was uncooperative in that he refused several times to provide his driver's license and name and continued to argue about violating the Indiana move over law. Even though the Plaintiff's hands were up in the air, a reasonable officer under the circumstances

14

when faced with an unidentified and argumentative suspect would reasonably believe that the Plaintiff could reach for a weapon faster than Defendant Hunter could unholster and aim his own weapon. Defendant Hunter did not threaten to deploy the taser or injure the Plaintiff with the taser. From the video footage, there is no question that, once the Plaintiff was secured, Defendant Hunter put away the taser, suggesting that he used only the amount of a threat of force necessary to secure the Plaintiff. *See Abbott v. Sangamon County*, 705 F.3d 706, 728 (7th Cir. 2013) ("Indeed, it is undisputed that Sweeney used the taser until Travis stopped fighting but did not use it thereafter, suggesting that Sweeney used no more force than was necessary to gain control of the actively resisting Travis."); *Hudkins v. City of Indianapolis*, No. 1:13-CV-01179, 2015 WL 4664592, at *18 (S.D. Ind. Aug. 6, 2015) ("Because he alleges only that Officer Wilson showed his weapon to effectuate an arrest—one we have found to have been supported by probable cause—Davis has not stated an excessive force claim." (citing *Rebolar ex rel. Rebolar v. City of Chicago*, 897 F.Supp.2d 723, 736 (N.D. Ill. 2012)). Therefore, the video footage shows the Plaintiff was incontrovertibly uncooperative to Defendants Wozniak and Hunter when he refused to identify himself and accept that he had violated a traffic law, and so there "[was] a reasonable threat of danger" to Defendants Wozniak, Hunter, and the general public within the vicinity of the traffic stop until the Plaintiff was restrained, at which point, Defendant Hunter put away the taser. *See Baird*, 576 F.3d at 346; *Abbott*, 705 F.3d at 728. Accordingly, the Plaintiff has not stated a plausible claim for excessive force.

3.  *False Arrest and False Imprisonment*

The Plaintiff alleges that he was illegally seized and thrown into jail. However, "[o]nce Officer [Wozniak] had probable cause to conduct the traffic stop of [the Plaintiff] for [not slowing down]," as discussed above in Section A(1), Defendants Wozniak and Hunter "could

15

arrest [the Plaintiff] without violating his Fourth Amendment rights." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *United States v. Childs*, 277 F.3d 947, 953 (7th Cir. 2002)). Thus, the Court need not address the Defendants' arguments on whether Defendants Wozniak and Hunter also had probable cause to arrest the Plaintiff and take him into custody for failing to identify himself. *See id*. ("Once Officer Snyder had probable cause to conduct the traffic stop of Jones for speeding, he could arrest Jones without violating his Fourth Amendment rights. Thus, we need not address whether Officers Snyder and Moore also had probable cause to arrest Jones for OWI-refusal or OWI-endangerment." (cleaned up)).

4.     *Unreasonable Search of Person*

The Plaintiff alleges that the search of his person violated the Fourth Amendment. As argued by the Defendants:

> Searches incident to arrests are valid in order to find weapons and to search for and seize any evidence on the arrestee's person in order to prevent concealment and to preserve evidence for trial. Where there is a lawful custodial arrest, a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under that Amendment.

*United States v. Thomas*, 512 F.3d 383, 387 (7th Cir. 2008) (citations omitted).

Here, Defendant Wozniak's dashboard camera video footage incontrovertibly establishes that as Defendant Wozniak was arresting the Plaintiff, which was lawful as discussed in Section A(3) above, he conducted a pat down search of the Plaintiff while asking the Plaintiff if he had any weapons on him. Therefore, because the pat down search was for weapons and was incident to the lawful arrest of the Plaintiff, the Plaintiff's allegation that the search of his person violated the Fourth Amendment incontrovertibly lacks plausibility.

5.  *Search and Seizure of the Plaintiff's Car*

The Plaintiff alleges that the search of his car violated his Fourth Amendment rights and that his car was illegally impounded and seized. The Defendants argue that "the search of the vehicle was reasonable because, as discussed above, the arrest was lawful and the search was done [as] an inventory search as the vehicle had to be impounded." Def. Br. 10, ECF No. 22. In his response, the Plaintiff contends that the search and seizure of his car was illegal because they were "fruits from a poisonous tree" since the Defendants did not have probable cause for the traffic stop as Defendant Wozniak "had no way to gauge his speed." Pl. Resp. 1–2, ECF No. 24. The inapplicability of the fruit of the poisonous tree doctrine to a § 1983 claim aside, *Townes v. City of New York*, 176 F.3d 138, 145 (7th Cir. 1999), as discussed in Section A(1) above, Defendant Wozniak had probable cause for the traffic stop of the Plaintiff as a matter of law and, thus, the Plaintiff's claim related to the search and seizure of his vehicle lacks plausibility. Accordingly, the Court need not address the Defendants' additional arguments on how the impounding of the Plaintiff's car and the subsequent inventory search complied with the Fourth Amendment.

**B.    Due Process Claim**

The Plaintiff alleges that he filed a complaint with the Schererville Police Department about the traffic stop, arrest, and searches by Defendants Wozniak and Hunter. And the Plaintiff received a response from Defendant Sormaz telling him that Defendants Wozniak and Hunter were "exonerated," which the Plaintiff contends violates his right to Due Process because all the evidence could not have been reviewed before the decision was made.

To plausibly allege that his Fourteenth Amendment due process rights were violated, the Plaintiff must allege that he was deprived of a constitutionally protected liberty or property

17

interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). However, as argued by the Defendants, the Plaintiff has no constitutionally protected library or property interest in a police investigation of his complaint about alleged police misconduct. *See Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) ("We note at the outset that Rossi does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction." (citation omitted)); *McPhaul v. Ball State Univ. Police*, No. 1:14-CV-623, 2016 WL 1077043, at *6 (S.D. Ind. Mar. 18, 2016) ("McPhaul has no liberty or property interest in a police investigation of a citizen's complaint about alleged police misconduct." (citing *Rossi*, 790 F.3d at 735)). Accordingly, the Plaintiff's claim for a violation of his Due Process rights also fails as a matter of law.

**C.    Opportunity to Amend**

A court "should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint."); *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (stating that the general rule is that "the district court should grant leave to amend after granting a motion to dismiss"). However, a court should not grant leave to amend "where the amendment would be futile." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). As discussed above, the dashboard camera video footage referred to in the Plaintiff's Complaint and filed with the Complaint incontrovertibly establishes that the Plaintiff's Fourth Amendment claims against the Defendants are not plausible, and the Plaintiff's claim for

violation of his right to Due Process fails as a matter of law. Therefore, any future amendments would be futile, and the Court dismisses with prejudice the Plaintiff's Fourth Amendment and Due Process claims against Defendants Wozniak, Hunter, and Sormaz.

### D. Defendants John Doe, Police Officer and John Doe, Deputy Chief of Police and/or Commander

Although Defendants John Doe, Police Officer and John Doe, Deputy Chief of Police and/or Commander have not joined in their co-defendants' motions to dismiss, the Court has an obligation under 28 U.S.C. § 1915(e)(2)(B) to "screen the [Complaint] for frivolous or inadequate claims and may dismiss them at any time." *Dodson v. Carter*, No. 3:16-CV-775, 2017 WL 3008808, *5 (N.D. Ind. July 14, 2017) (dismissing claims against Indiana state defendants "even though the Indiana State Defendants did not move to dismiss these claims"). Here, the Court has determined that the Plaintiff's Fourth Amendment claims are incontrovertibly implausible based on the dashboard camera video footage referred to in the Plaintiff's Complaint and filed with the Complaint, and the Plaintiff's claim for violation of his right to Due Process fails as a matter of law. The Plaintiff does not allege any distinct claims or injuries against Defendant John Doe, Police Officer or Defendant John Doe, Deputy Chief of Police and/or Commander. Accordingly, the Court must also dismiss the claims against Defendants John Doe, Police Officer and John Doe, Deputy Chief of Police and/or Commander.

## CONCLUSION

Accordingly, the Court hereby GRANTS the Motion to Dismiss [ECF No. 21]. The Court DISMISSES with prejudice all claims against Defendants Wozniak, Hunter, Sormaz, John Doe, Police Officer, and John Doe, Deputy Chief of Police and/or Commander. The Court STRIKES the Plaintiff's surreply [ECF No. 27] and supplemental response [ECF No. 49] because the filings are responses to the Defendants' Motion to Dismiss not permitted in the manner submitted by the Plaintiff pursuant to Northern District of Indiana Local Rule 7-1(d)(2) (permitting only one response by the non-moving party). As all the Plaintiff's claims are

dismissed, the Court DIRECTS the Clerk of Court to close this case.

    SO ORDERED on March 2, 2026.

                                        s/ Theresa L. Springmann  
                                       JUDGE THERESA L. SPRINGMANN  
                                       UNITED STATES DISTRICT COURT